152 N.J. Super. 460 (1977)
378 A.2d 47
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LARRY WAYNE NEWELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 8, 1977.
Decided August 26, 1977.
*463 Before Judges LORA, SEIDMAN and ANTELL.
Ms. Ellen Koblitz, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. Mark Paul Cronin, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Daniel Louis Grossman, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant and one Eugene R. Powell were indicted for (1) setting fire to a barn (N.J.S.A. 2A: *464 89-2), and (2) conspiring to burn the barn (N.J.S.A. 2A:98-1). Tried alone to a jury (Powell having previously pleaded guilty to the first count), defendant was found guilty of both offenses and sentenced for burning the building to a 364-day term in the Burlington County Jail, with six months to be served in custody and the remainder suspended, to be followed by a probationary term of two years. He was also ordered to make restitution in the amount of $500. On the conspiracy count, defendant received a suspended, concurrent 364-day jail term. This appeal followed.
The contentions are that (1) the conspiracy conviction must be reversed because the indictment failed to allege the commission of an overt act in furtherance of the conspiracy, and the jury was erroneously charged that an overt act was not necessary to prove the crime charged (not raised below); (2) the trial judge erroneously charged the jury "concerning the capability [sic] of one who consents to the burning of a building" (not raised below); (3) the prosecutor's cross-examination of defendant implied to the jury that he had committed a similar crime in the past, and (4) the entire trial "was so infected with error as to mandate a finding that the defendant did not receive a fair trial" (not raised below).
During the night of July 9, 1974 a barn on a small farm in Southampton Township, Burlington County, was destroyed by fire. It is not disputed that defendant and two companions were present at the time. The controversy at the trial was over defendant's involvement in the incident.
The State's proofs established that defendant, Powell and a juvenile had been riding around in Powell's car for several hours on the night in question. During that time they imbibed a considerable quantity of beer. According to the juvenile, who testified for the State, they came to a stop at one point and someone in the car brought up the idea and "we figured we would burn down a barn or something like that." The juvenile, who was "pretty intoxicated," got out of the car, picked up some hay in the field, carried it *465 to the barn and started to light it. The three then drove away. He could not recall whether defendant ever discussed setting fire to the barn and he denied seeing defendant place hay or anything else against the barn and setting it on fire.
Powell, also called as a State's witness, related that the subject of fires arose as they were driving about and that defendant mentioned an old barn. When they reached the location "we all got out of the car and got bales of hay and put it around there and lit it on fire."
A police officer testified that after being apprehended defendant gave a statement in which he said that the subject of setting a fire came up as they were driving around and that his companions got bales of hay and "started kicking it all over by the barn and they started setting the matches."
Testifying in his own behalf, defendant admitted that the subject of fires was discussed. He said that they stopped at the farm where the barn was located in order to "go to the bathroom." They walked up the road to the barn, where his companions put hay around the barn and set it on fire. He said that he "hollered" for them to get back to the car. He denied agreeing to set the fire or telling them that he would help the others do so.
We consider first defendant's argument respecting the conspiracy indictment. We are satisfied that the indictment was fatally defective and the conviction of that offense cannot stand. There is no merit in the State's contention that, since the indictment was not challenged prior to trial, defendant is barred from raising the issue at this time. The defense that an indictment fails to charge an offense may be raised on appeal. R. 3:10-3. In any event, we deem the matter of sufficient magnitude to notice it, if necessary, as plain error. R. 2:10-2. Defendant was charged, not with conspiring to commit arson under N.J.S.A. 2A:89-1,[1] *466 but with conspiring to burn a building not part of a dwelling house, in violation of N.J.S.A. 2A:89-2. While a conspiracy to commit arson or certain other offenses not pertinent here does not require the doing of "some act * * * to effect the object thereof by 1 or more of the parties thereto", an overt act is required in the case of a conspiracy to commit a burning which does not constitute arson. See N.J.S.A. 2A:98-2.[2]
The law is thoroughly settled that an indictment must allege all the essential facts of the crime charged. State v. La Fera, 35 N.J. 75, 81 (1961); R. 3:7-3(a). The omission of an essential element cannot be supplied by inference or implication, or left to intendment. State v. Engels, 32 N.J. Super. 1, 6 (App. Div. 1954); State v. Algor, 26 N.J. Super. 527, 531 (App. Div. 1953); State v. Lombardo, 20 N.J. Super. 317, 321 (App. Div. 1952); see State v. Hanly, 33 N.J. Super. 549, 556 (Law Div. 1955).
Where a conspiracy, to constitute a crime, requires proof of an overt act, such overt act represents a substantive element of the crime and is not a mere evidential requirement. See State v. Malaspina, 120 N.J. Super. 26, 28-29 (App. Div. 1972), certif. den. 62 N.J. 75 (1972); State v. Gregory, 93 N.J.L. 205 (E. & A. 1919). See also, Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). The gravamen of the offense is the agreement among the conspirators to do an unlawful act attended by an act of one or more of the conspirators to effect the object of the conspiracy. State v. Western Union Telegraph Co., 13 N.J. Super. 172, 204 (Cty. Ct. 1951), aff'd 12 N.J. 468 (1953); *467 see State v. Graziani, 60 N.J. Super. 1, 15 (App. Div. 1959), aff'd 31 N.J. 538 (1960), cert. den. 361 U.S. 830, 80 S.Ct. 1601, 4 L.Ed.2d 1524 (1960). In State v. Hemmendinger, 100 N.J.L. 234, 237 (Sup. Ct. 1924), aff'd 101 N.J.L. 417 (E. & A. 1925), the court emphasized that it is essential, "where there is a charge of conspiracy which requires an overt act to be done in execution of it, in order to make the conspiracy indictable, that such overt act should be set out in the indictment." See also, State v. Simon, 113 N.J.L. 521, 523-524 (Sup. Ct. 1934), aff'd 115 N.J.L. 207 (E. & A. 1935).
The State argues, however, that the error, if any, was harmless, since coupling the conspiracy indictment with that for burning the barn would indicate that the grand jury had found all the elements of the conspiracy, including the overt act, and defendant, therefore, could not have been prejudiced. We disagree.
If the court should interpolate into this indictment the allegation that an overt act was committed, the crime of conspiracy would indeed be charged, but the accusation would be in part made by the court, and in part made by the grand jury, and this plainly would not fulfill the constitutional requirement [that the criminal accusation "proceed from the grand inquest"]. [Wood v. State, 47 N.J.L. 180, 181 (Sup. Ct. 1885)]
We also disagree with the State's assertion that the trial judge could have amended the indictment to specify the overt act of actually burning the barn. An indictment is amendable in form but not in substance. The substantive process is exclusively the grand jury's. State v. Grothmann, 13 N.J. 90, 94 (1953). It is fundamental in the constitutional limitation that an indictment is not amendable by the court to charge an offense not found by the grand jury, either by a substitution of offense or to supply substantive omissions, Id. at 95. Moreover, it is to be noted that the trial judge here, after correctly charging the jury that the State was required to prove an overt act in order to establish the *468 conspiracy to burn the building, withdrew the instruction and erroneously charged the jury that no overt act need be proved.
We conclude that defendant's conviction on the conspiracy indictment must be reversed.
Defendant also assigns as plain error, no objection having been noted below, that portion of the explanation to the jury of the essential elements of the crime of "arson" in which the trial judge said, in part:
To find the defendant guilty, the State must prove each of the following elements beyond a reasonable doubt; that the defendant willfully or maliciously burned or consented to the burning of a structure, and as a result of that willful or malicious act a structure was burned. [Emphasis supplied.]
The State acknowledges that consent is not an element of the act proscribed by N.J.S.A. 2A:89-2, i.e., burning a building other than a dwelling house. It is the arson statute, N.J.S.A. 2A:89-1, which denounces as a crime the willful or malicious burning or consenting to the burning of a dwelling house. However, the State argues that the term "consent," which was not defined by the trial judge, is sufficiently similar to the operative language of aiding and abetting, N.J.S.A. 2A:85-14, which was submitted to the jury as an alternative theory, so that the error was not "of reversible magnitude." We disagree.
That the jury was confused by the charge is evident from its request for further instructions on the definition of arson, "that portion containing the word consent," and the portion about aiding and abetting, as well as conspiracy. The trial judge compounded his earlier error in his supplemental charge:
Referring to the portion of arson, definition of arson containing the word consent, to find a defendant guilty, the State must prove each of the following elements beyond a reasonable doubt: that the defendant willfully or maliciously burned or consented to the burning of a structure. It had to be willful or malicious and he consented *469 to the burning  either burned or consented to the burning of a structure. [Emphasis supplied]
He then went on to reinstruct the jury on aiding and abetting.
On the proofs before it, the jury could have found, on proper instructions, that defendant actually participated in the act of setting fire to the barn, or that he aided or abetted therein, or that while present at the scene he did neither. While it is true that an aider and abettor is punishable as a principal, N.J.S.A. 2A:85-14 refers to any person "who aids, abets, counsels, commands, induces, or procures another to commit a crime". As used in the statute the word "aid" means to assist, support or supplement the efforts of another, and the word "abet" means to encourage, counsel, incite or instigate the commission of a crime. The aider and abettor must share the same intent as the one who actually committed the offense. State v. Madden, 61 N.J. 377, 396-397 (1972). There must be a community of purpose between the actual perpetrator and the aider and abettor. State v. Sims, 140 N.J. Super. 164, 174-175 (App. Div. 1976). Although mere presence at or near the scene of the crime, or the failure to intervene, does not make one a participant in the crime, presence at the commission of a crime without disapproving or opposing it is evidence which, in connection with other circumstances, permits the inference that he asserted thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same. State v. Smith, 32 N.J. 501, 521 (1960), cert. den. 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961).
It is evident that much more is involved in aiding and abetting than the undefined term "consent." The State's thesis might have more substance if the case had been submitted to the jury solely on the theory that defendant was an aider and abettor. But the trial judge put to the jury not only the issue of whether defendant's alleged participation in the crime was as an aider and abettor, as defined in N.J.S.A. 2A:85-14, but also whether he was guilty of the substantive *470 offense described in N.J.S.A. 2A:89-2 because he burned "or consented" to the burning of the barn. See State v. Morales, 111 N.J. Super. 521, 526 (App. Div. 1970), certif. den. 57 N.J. 433 (1971). The State would have us believe that the jury necessarily construed the term "consent" as relating to aiding and abetting, rather than as an element of the crime itself. But we are unable to tell whether the jury found defendant guilty simply after a consideration of the elements of the substantive offense as incorrectly explained and undefined by the court, without going on to the alternate theory of aiding and abetting; or whether the finding of guilt was exclusively on the basis that defendant was an aider and abettor. If the former, it is clear that there was reversible error. We prefer not to speculate on the matter. We are satisfied that a potential for prejudice was created which mandates a reversal and remand for a new trial.
Because of the result reached, we deem it unnecessary to consider the remaining assignments of error.
The judgment of conviction on the conspiracy indictment is reversed. The judgment of conviction for burning the barn is reversed and a new trial granted on that indictment.
NOTES
[1] N.J.S.A. 2A:89-1 deals with the willful or malicious "burn[ing] or consent[ing] to the burning of a dwelling house * * * or a structure that is a part of or belongs to or adjoins such dwelling house, or any other building, by means whereof a dwelling house shall be burnt * * *."
[2] This statute provides that

[e]xcept for conspiracy to commit arson, breaking and entering or entering, burglary, kidnapping, manslaughter, murder, rape, robbery or sodomy, no person shall be convicted and punished for conspiracy unless some act be done to effect the object thereof by 1 or more of the parties thereto.