[No. 27406-6-I. Division One. October 26, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. ROLAND C. DENT, *Appellant.*

*Nancy Lynn Talner* and *Donna McNamara,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

WEBSTER, J. — Roland C. Dent appeals his conviction of conspiracy to commit first degree murder. Dent contends that the trial court erred (1) in denying his request for a jury instruction defining a substantial step, (2) in defining a substantial step as conduct which strongly indicates a criminal purpose, and (3) in failing to instruct the jury that the State was required to prove venue in Snohomish County; and contends there was insufficient evidence to support the substantial step element.

While incarcerated on a parole violation Dent contacted Carlos Balcinde to murder Ann Powell. Dent corresponded with Joyful Tryon, instructing her to do certain things for Balcinde: (1) forward Dent's letters to him; (2) pick him up upon his release from the King County Jail; (3) show him a video and let him listen to an audiotape of Ann Powell so that he could identify her for the murder; (4) remove the serial numbers from her gun, report the gun stolen, give him the gun; (5) pay him $400; (6) and give him a key to Dent's apartment. Tryon cooperated with the police in providing the letters and assisted in taping telephone conversations in which Dent outlined the Dent-Balcinde conspiracy to murder Powell. Balcinde was arrested as he was preparing to accept payment for the murder and view the videotape. Dent and Balcinde were jointly convicted of conspiracy to commit first degree murder.

## JURY INSTRUCTION

Dent claims the court erred in refusing to give his proposed jury instruction that a "substantial step is conduct which strongly indicates a criminal purpose and which is more than mere preparation." WPIC 100.05.[1] The instruction given defined a substantial step as "conduct which strongly indicates a criminal purpose". Dent's argument is

---

[1]Note on use directs use of this instruction with WPIC 100.01, Attempt — Definition.

that since the conspiracy statute, RCW 9A.28.040(1),[2] does not define substantial step, the definition used with the attempt statute, RCW 9A.28.020(1), should be used. He notes that both statutes were enacted at the same time, both use a substantial step as an element of the crime, and the commentary accompanying the definition of conspiracy states that the reader should see WPIC 100.05, Substantial Step — Definition. 11 Wash. Prac., *WPIC* 110.01 comment, at 442 (1977). He asserts that this language strongly suggests a basic sameness of the phrase "substantial step" in the attempt and conspiracy statutes.[3] Dent cites *State v. Hawthorne*, 48 Wn. App. 23, 737 P.2d 717 (1987), for the proposition that the "substantial step" element in the conspiracy statute should be construed as some act directed toward the ultimate crime and, thus, should require an act of more than mere preparation.

It is fundamental that "[t]hinking about perpetrating a crime is not unlawful." *United States v. Washington Water Power Co.*, 793 F.2d 1079, 1082 (9th Cir. 1986). Clues to the purpose of the substantial step element in the conspiracy and attempt statutes are reflected in the plain language of the statutes themselves. The attempt statute requires "a substantial step toward the commission of that crime", RCW 9A.28.020(1), while the conspiracy statute requires "a substantial step in pursuance of such agreement", not necessarily the crime itself. RCW 9A.28.040(1). Dent's reliance on *Hawthorne* is misplaced. The issue in *Hawthorne*

---

[2] RCW 9A.28.040(1) states:

"A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, any one of them takes a substantial step in pursuance of such agreement."

[3] At the time the original 11 Washington Practice was published, WPIC 100.05 defining "substantial step" stated no pattern instruction was proposed. When the revision was published, WPIC 100.05 defined "[a] substantial step [as] conduct which strongly indicates a criminal purpose and which is more than mere preparation." The comment to WPIC 110.01 was expanded, and the reference to WPIC 100.05 *was not deleted*.

was whether the charging information was defective since it failed to specify what overt act was the substantial step in furtherance of the conspiracy; not whether "pursuance" of the agreement refers to some act directed toward the ultimate crime. *See Hawthorne*, at 27. The court found the charge was not so vague as to require "dismissal unless the prosecuting officials refuse[d] to comply with an order calling for greater particularity." *Hawthorne*, at 28 (quoting *State v. Bonds*, 98 Wn.2d 1, 16, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983)).

■ The instruction requested by the defense on the substantial step element of a conspiracy was wrong. The conspiracy statute, RCW 9A.28.040, does not define "substantial step", and as yet there are no Washington cases defining the term in the conspiracy context. We now clarify a substantial step in the context of conspiracy cases. In *attempt cases*, the "substantial step" element is similar to the overt act required under the former attempt statute. The "overt act" requirement ensured that a person was not punished for criminal intent alone. *See State v. Lewis*, 69 Wn.2d 120, 124, 417 P.2d 618 (1966) (decided under former RCW 9.01.070). In contrast, "[t]he gist of [conspiracy] is the confederation or combination of minds." *State v. Casarez-Gastelum*, 48 Wn. App. 112, 116, 738 P.2d 303 (1987) (quoting *Marino v. United States*, 91 F.2d 691, 693, 113 A.L.R. 975 (9th Cir. 1937), *cert. denied sub nom. Gullo v. United States*, 302 U.S. 764 (1938)). In *conspiracy cases*, the "substantial step" requirement is similar to the "overt act" requirement under federal conspiracy law:

> The function of the overt act in a conspiracy prosecution is simply to manifest "that the conspiracy is at work," and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.

(Citation omitted). *Yates v. United States*, 354 U.S. 298, 334, 1 L. Ed. 2d 1356, 77 S. Ct. 1064 (1957). Even if, as Dent argues, action in pursuance of the agreement is to take action toward commission of the crime, acts of mere prepa-

ration are enough to manifest that the agreement exists and is at work. Accordingly, we hold the substantial step in conspiracy cases need not be limited to conduct which is more than mere preparation. To hold otherwise would require that every conspiracy also be an attempt. That interpretation would blur the distinction between the conspiracy and attempt statutes. Dent's proposed instruction was misleading and did not inform the jury of the applicable law. *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985).

SUFFICIENCY

Dent claims there was insufficient evidence to support the substantial step element of conspiracy. He argues his conversations and letters with Tryon requesting she do certain things (such as procure a gun, give Balcinde some money and show him a videotape of Powell) were merely expressions of desires but not acts constituting a substantial step since Tryon never acted on these desires. Furthermore, Dent asserts that Balcinde's contact with the arresting officers does not constitute a substantial step because he did not initiate that contact.

We find there was sufficient evidence of a substantial step to support the conspiracy charge. If either coconspirator exhibits conduct which is a "substantial step", *i.e.,* "strongly indicates a criminal purpose", that is sufficient to show the conspiracy exists and is at work. The record clearly shows numerous substantial steps by Dent and Balcinde. Their acts clearly fall within the standard of conduct which strongly indicates a criminal purpose.

Even if the attempt standard for substantial step were used, these acts are clearly within the Model Penal Code definition adopted in *Workman. State v. Workman,* 90 Wn.2d 443, 451, 584 P.2d 382 (1978). First, when Balcinde was arrested he was on his way to view the videotape. According to Dent, the purpose of this was that there would be "no mistaken I.D." Tryon had also been instructed to show Balcinde the building where Powell lived. In other words, Balcinde had begun the process of "reconnoitering" both the vic-

tim and the scene of the intended crime. Model Penal Code § 5.01(2)(c), 10 U.L.A. 499 (1974). Second, Dent directed Tryon to prepare the murder weapon, by filing off the serial number. Dent had taken every step in his power to obtain "possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use". Model Penal Code § 5.01(2)(e). Third, by directing Tryon to prepare for commission of the crime, Dent "solicit[ed] an innocent agent to engage in conduct constituting an element of the crime." Model Penal Code § 5.01(2)(g).

## VENUE

Dent claims the trial court erred in refusing to give his to-convict instruction that required the State to prove beyond a reasonable doubt all of the acts occurred in Snohomish County. Over Dent's objection, the court instructed the jury in its to-convict instruction that it only had to find that the acts occurred in Washington state. Dent argues that if there was an agreement between him and Balcinde, it occurred in the King County Jail. Further, if there was any act that could support an inference of substantial step, that act was contact between Balcinde and the arresting officers, which, again, occurred in King County. Finally, all of the letters and phone calls from Dent to Tryon originated either in King or Mason County.

■■ Under article 1, section 22 of the Washington Constitution a defendant must be tried in the county where the crime allegedly occurred. Venue is not an element of the crime, *State v. Escue*, 6 Wn. App. 607, 495 P.2d 351 (1972), and need not be proved beyond a reasonable doubt. *State v. Marino*, 100 Wn.2d 719, 727, 674 P.2d 171 (1984); *State v. Johnson*, 45 Wn. App. 794, 727 P.2d 693 (1986). Venue of a conspiracy charge may be laid in either (1) the county where the agreement was entered into or (2) any county where an overt act was done by any of the conspirators in furtherance of the common design. *State v. Mardesich*, 79 Wash. 204, 209, 140 P. 573 (1914). This rule is identical to the rule applied by federal courts. *United States v. Ahumada-Avalos*, 875 F.2d 681, 682 (9th Cir.) (per curiam), *cert.*

*denied*, 493 U.S. 837 (1989). A number of federal cases have considered conspiracies that were carried out by means of telephone or mail. They have held that a telephone call to recruit a potential conspirator is an overt act and the case can be prosecuted in districts where the messages were either sent or received. *United States v. Lewis*, 676 F.2d 508, 511 (11th Cir.), *cert. denied*, 459 U.S. 976 (1982).

We find there was no error on the part of the court in refusing to give the instruction on venue beyond a reasonable doubt. Venue was properly in Snohomish or King County. First, Dent placed a telephone call to Tryon in Snohomish County for the purpose of instructing her how to carry out the conspiracy. He also attempted to communicate by mail with his coconspirator, using Tryon in Snohomish County as an intermediary.

■ Second, the trial court was not obliged to give a proposed instruction that erroneously required proof beyond a reasonable doubt that all elements of the crime were committed in Snohomish County. Proof beyond a reasonable doubt is not necessary; it is sufficient if venue can be reasonably inferred from the facts and circumstances. *Marino*, at 727-28. Additionally, the instruction required proof that all of "the acts occurred in Snohomish County." In fact, it is only necessary that *either* the agreement or *any* of the acts in furtherance of it occurred in Snohomish County. *Mardesich*, at 209. A trial court has no duty to rewrite incorrect statements of law contained in proposed instructions. *State v. Robinson*, 92 Wn.2d 357, 361, 597 P.2d 892 (1979). "A request for an instruction that is in part erroneous is no request at all." *State v. Mayner*, 4 Wn. App. 549, 552, 483 P.2d 151, *review denied*, 79 Wn.2d 1008 (1971). Since Dent's proposed instruction contained significant errors, the court was not required to give it.

■ Third, exceptions to jury instructions must be taken before the instructions are read to the jury. *State v. Louie*, 68 Wn.2d 304, 311, 413 P.2d 7 (1966), *cert. denied*, 386 U.S. 1042 (1967). In *State v. Harris*, 48 Wn. App. 279, 283, 738 P.2d 1059, *review denied*, 108 Wn.2d 1036 (1987), this court

found a defendant who did not timely object to venue has waived any error. Dent's exception after the jury retired was too late. Codefendant Balcinde interrupted reading of the instructions to reserve objection to venue. After the jury began deliberations, both counsel objected to the venue instruction. Hence, Dent's objection did not occur until after the jury began deliberations. The objection was not timely.

We affirm.

GROSSE, C.J., and FORREST, J., concur.

Review granted at 121 Wn.2d 1001 (1993).